JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE BURRIS and SHERRY BURRIS, individually and on behalf of other persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HSBC BANK USA, NATIONAL ASSOCIATION; and CAPITAL ONE, NATIONAL ASSOCIATION,<br><br>Defendants. | Case No. 14-CV-02242 AB (CWx)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT** |

Pending before the Court is Defendants HSBC Bank and Capital One's Motion to Dismiss. (Def. Mot., Dkt. No. 10.) Plaintiffs George Burris and Sherry Burris filed an Opposition. (Pl. Opp., Dkt. No. 13.) Defendants filed a Reply. (Def. Reply, Dkt. No. 14.) This Court took this matter under submission. (Dkt. No. 22.) For the reasons discussed below, the Court **GRANTS** the Motion to Dismiss.

I. **BACKGROUND**

This class action arises out of Plaintiffs' allegations that Defendants misapplied Plaintiffs' payments to their credit card account in violation of the credit card agreement and several statutes.

In 2006, Plaintiffs entered into a Cardmember Agreement with Defendants to obtain a Platinum MasterCard. (Complaint, Dkt. No. 1, ¶ 11.) When a credit card payment is made, the Cardmember Agreement provides that "[w]e apply your payment up to [and] including the Minimum Payment Due as we determine, and usually to lower APR balances before higher ones. Any payment amount greater than the Minimum Payment Due is applied to higher APR balances before lower ones." (Compl., ¶ 12.)

The annual percentage rate ("APR") applied to Plaintiffs' Platinum MasterCard is 19.99% for purchases and ranged from 21.74% to 28.99% for cash advances. (Compl., ¶ 13.)

Each month, Plaintiffs receive a billing statement reflecting all the transactions during the preceding billing cycle, and the minimum payment. (Def. Mot., p. 1 ¶ 2.) In June 2011, Defendants sent a billing statement to Plaintiffs for the billing cycle that began on May 8, 2011 and ended on June 7, 2011. (*Id.*) The billing statement notified Plaintiffs that their outstanding balance was $2,090.33 and that fifty-five dollars ($55.00) was due on July 2, 2011. (Compl., ¶ 14; Def. Mot., p. 1 ¶ 2, p. 6 ¶ 4.)

On June 11, 2011, using their credit card, Plaintiffs withdrew a $700.00 cash advance. (Compl., ¶ 15.) On June 17, 2011, Plaintiffs paid $880.00 to Defendants to be applied to their account. (*Id*. at ¶ 16.) Defendants posted the payment on June 17, 2011. (*Id*.) Defendants applied Plaintiffs' payment to the preceding billing cycle, May 8, 2011 through June 7, 2011. (Def. Mot., p. 6 ¶ 4.) As a result, Defendants applied the entire payment to the balance with the lower APR. (*Id*. at p. 1.) Plaintiffs intended for the payment to be applied to the cash advance they withdraw, to which a higher APR applied. (Compl., ¶ 19.)

On several occasions, Plaintiffs called Defendants to contest the payment allocation. (*Id*.) Plaintiffs expected their payment to be applied to the $700.00 cash advance they withdrew on June 11, 2011. (*Id*.)

On March 24, 2014, Plaintiffs filed a class action complaint alleging that the misapplication of their payment was a breach of the Cardmember Agreement, a violation of the Fair Credit Billing Act ("FCBA"), 15 U.S.C. § 1601 *et seq*., a violation of the California Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788, *et seq*., and a violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*. (*See* Compl.) Defendants move to dismiss. (*See* Def. Mot.)

**II. LEGAL STANDARD**

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. A complaint survives a motion to dismiss under Rule 12(b)(6) if it

3.

contains a "short and plain statement of the claim showing that the pleader is entitled to relief," which does not require "detailed factual allegations," but it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78, 129 S. Ct. 1937, 1949 (2009). A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988); *accord Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248 (9th Cir. 1997) ("A complaint should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"). In other words, a complaint must allege facts sufficient to raise a right to relief that rises above the level of mere speculation and is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965, 1969 (2007).

Allegations of fact are taken as true and construed in the light most favorable to the nonmoving party. *See Newdow v. Lefevre*, 598 F.3d 638, 642 (9th Cir. 2010), *cert. denied*, 131 S. Ct. 1612 (2011). In analyzing the sufficiency of the complaint, the Court must first look at the requirements of the causes of action alleged. *See Iqbal*, 556 U.S. at 675. The Court may then identify and disregard any legal conclusions, which are not subject to the requirement that the Court must accept as true all of the allegations contained in the complaint. *Id.* at 678.

Moreover, in ruling on a 12(b)(6) motion, a court generally cannot consider

material outside of the complaint (*e.g.*, those facts presented in briefs, affidavits, or discovery materials). *See Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994). A court may, however, consider exhibits submitted with the complaint. *See Id.* at 453-54. Also, a court may consider documents which are not physically attached to the complaint but "whose contents are alleged in [the] complaint and whose authenticity no party questions." *Id.* at 454. Further, it is proper for the court to consider matters subject to judicial notice pursuant to Federal Rule of Evidence 201. *See Mir, M.D. v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988).

## III. DISCUSSION

Defendants move to dismiss Plaintiffs' complaint on the grounds that (1) controlling authority under Regulation Z eliminates Plaintiffs' theory of liability; (2) Plaintiffs failed to give Defendants proper notice of the billing errors; (3) Plaintiffs' account was never delinquent under the Rosenthal Act; and (4) Defendants never breached the Cardmember Agreement. (*See* Def. Mot.)

### 1. Counts One and Two: The Conduct Alleged Does Not Constitute a Breach of the Cardmember Agreement Or a Violation of the FCBA

Plaintiffs' first cause of action for breach of contract and second cause of action for violating the FCBA are based on the same factual allegations of misapplying Plaintiffs' June 17 credit card payment. (*See* Compl.) Additionally, with regard to the breach of contract allegation, Plaintiffs claim Defendants were on notice of such billing errors and payment misapplications. (*Id.*) According to Plaintiffs, Defendants

applied their payment in violation of the FCBA, 15 U.S.C. § 1666(c)(b)(1), and caused Plaintiffs to continue to pay interest on their accounts they otherwise would have avoided paying. (*Id*.)

Defendants move to dismiss these claims on two (2) grounds. First, they contend that their conduct is consistent with the terms of the agreement and the applicable regulations. Second, Defendants contend that Plaintiffs' FCBA claims fail because Plaintiffs did not provide written notice of the alleged violations as statutorily required.

Because these two claims are based on the same conduct, the Court discusses them jointly.

**A. Applicable Law Governing Credit Card Billing and Payments**

Credit card billing is federally regulated under the FCBA in accordance with the Truth in Lending Act ("TILA") and Regulation Z. 15 U.S.C. § 1601 *et seq*.

Under Regulation Z, a company that issues a credit card is a "card issuer." 12 C.F.R. § 1026.2(a)(7).

A card issuer usually sends a "periodic statement," commonly known as a billing statement, once every billing cycle to the cardholder. *Id*. § 1026.7; *accord* § 1026.2(a)(4).

A billing statement must include the previous balance (§ 1026.7(b)(1)), identify all transactions made during the previous billing cycle (§§1026.7(b)(2), 1026.8), state the minimum payment due (§ 1026.7(b)(13)), reflect the due date for a payment (§

6.

1026.7(b)(11)), and provide the "closing date of the billing cycle and the account balance outstanding on that date." § 1026.7(b)(10).

12 C.F.R. § 1026.53(a) provides that "… when a consumer makes a payment in excess of the required minimum period payment for a credit card account under an open-end (not home-secured) consumer credit plan, the card issuer must allocate the excess amount first to the balance with the highest annual percentage rate and any remaining portion to other balances in descending order based on the applicable annual percentage rate."

The Official Staff Commentary under this provisions states that "Section 1026.3 permits a card issuer to allocate an amount paid by the consumer in excess of the required minimum periodic payment based on the annual percentage rates and balances on the day the preceding billing cycle ends, on the day the payment is credited to the account, or on any day between those two dates." 12 C.F.R. § 1026, Supp. I, Comm. 53-2.

### B. Applicable Terms and Conditions of the Credit Card Agreement

The Cardmember Agreement between Plaintiffs and Defendants states that an APR of 19.99% applies to purchases and an APR between 21.74% and 28.99% applies to cash advances. (*Id.*, ¶ 13.) Each month, Plaintiffs receive a billing statement reflecting all the transactions during the preceding billing cycle and the minimum payment. (Def. Mot., p. 1 ¶ 2.)

The Cardmember Agreement states that Defendants will allocate payments as

7.

follows:

> "[w]e apply your payment up to [and] including the Minimum Payment Due as we determine, and usually to lower APR balances before higher ones. Any payment amount greater than the Minimum Payment Due is applied to higher APR balances before lower ones."

(Compl., ¶ 12.) The Court finds this provision to control Defendants' payment allocation of cardholder payments.

### C. Plaintiffs' Allegations of Defendants' Payment Allocation are Consistent with the Cardmember Agreement, the FCBA, and Applicable Regulations

Plaintiffs claim that Defendants breached the Cardmember Agreement and violated the FCBA because Defendants failed to allocate Plaintiffs' June 17, 2011 payment, $880.00, to the higher-APR June 11, 2011 cash advance, $700.00, and instead applied it to their lower-APR balance. However, the Cardmember Agreement and the FCBA allow Defendants to allocate Plaintiffs' payment in the way Defendants did.

The Staff Commentary to 12 C.F.R. § 1026 states, "Section 1026.3 permits a card issuer to allocate an amount paid by the consumer in excess of the required minimum periodic payment based on the annual percentage rates and balances <u>on the day the preceding billing cycle ends, on the day the payment is credited to the account, or on any day between those two dates</u>." 12 C.F.R. § 1026, Supp. I, Comm. 53-2 (emphasis added).

Here, in June 2011, Defendants sent a billing statement to Plaintiffs for the

8.

billing cycle that began on May 8, 2011 and ended on June 7, 2011. (Compl., ¶ 14.) On June 17, 2011, Plaintiffs made an $880.00 payment to their credit card account, which posted to their account on the same day. (*Id*. at ¶ 16.)

Applying the foregoing Staff Commentary, Defendants may allocate Plaintiffs' payment on the day the preceding billing cycle ends, June 7, 2011, on the day the payment is credited to the account, June 17, 2011, or on any day between those two dates, between June 7 and June 17.

When Plaintiffs' payment was made, Plaintiffs' account had a $2,090.33 balance, which operated under the 19.99% APR. (Compl., ¶ 14; Def. Mot., p. 1 ¶ 2, p. 6 ¶ 4.) As a result, Defendants allocated Plaintiffs' entire payment to the balance due as of June 7, 2011, and allocated none of Plaintiffs' payment to the cash advance. Because the Staff Commentary provides the card issuer with discretion in allocating payments, Defendants did not consider the APR that applied to the cash advance when they allocated Plaintiffs' payment. Instead, Defendants allocated Plaintiffs' payment based on the APRs and balances as of June 7, 2011, the day the preceding billing cycle ends. 12 C.F.R. § 1026 authorizes a creditor to allocate a payment in exactly this way.

Thus, Defendants did not have to consider the cash advance's higher APR when Defendants allocated Plaintiffs' payment. The Cardmember Agreement does not require Defendants to allocate payments in any way different from what the FCBA permits. For Plaintiffs' claims to survive, the Cardmember Agreement or the FCBA

9.

must require a creditor to allocate a payment according to a real-time assessment of the APRs that apply. Although the FCBA allows a creditor to allocate a payment in this way, *see* 12 C.F.R. § 1026 Supp. I, Comm. 53-2, it does not require a creditor to do so. As such, the fashion in which Defendants allocated Plaintiffs' payment was consistent with the FCBA and the Cardmember Agreement. Therefore, Plaintiffs cannot maintain their first and second causes of action.

### D. Plaintiffs Have Not Alleged that They Provided Written Notice of Defendants' Alleged Billing Errors

Defendants argue that Plaintiffs' claims fail because they failed to allege that they provided Defendants with the requisite written notice of the alleged billing errors. Plaintiffs claim that they put Defendants on notice regarding the alleged billing errors of payment misallocation. (*Id*.)

With respect to Billing Error Notifications, the Cardmember Agreement states:

> NOTIFY US IN CASE of ERRORS OR QUESTIONS ABOUT YOUR BILL[:] If you think your bill is wrong, or if you need more information about a transaction on your bill write us on a separate sheet at the address listed on your bill.

(Dkt. No. 12, Ex. B.)

15 U.S.C. § 1666 states, in relevant part, "if a creditor, within sixty days…receives…from the obligor in which the obligor—(1) sets forth or otherwise enables the creditor to identify the name and account number (if any) of the obligor, (2) indicates the obligor's belief that the statement contains a billing error and the amount of such billing error, and (3) sets forth the reasons for the obligor's belief (to

10.

the extent applicable) that the statement contains a billing error, the creditor shall…(i) make appropriate corrections in the account of the obligor…or (ii) send a written explanation or clarification to the obligor. . . ." 15 U.S.C. § 1666(a)(1)-(3), (B)(i)-(ii).

12 C.F.R. § 1026.13(b)(1) of the FCBA states, "[a] billing error notice is a written notice from a consumer that…[i]s received by a creditor at the address disclosed under § 1026.7(a)(9) or (b)(9), as applicable, no later than 60 days after the creditor transmitted the first periodic statement that reflects the alleged billing error. . . ." Thus, both the card agreement and the FCBA require a cardholder to provide the creditor written notice of a billing error.

Plaintiffs allege that they only contacted Defendants via telephone on several occasions to contest the payment application. (Compl., ¶ 19.) Plaintiffs do not allege that they gave Defendants written notice about the alleged error. Without written notice of the billing errors in question, Defendants' remedial duties under the FCBA are not triggered, and the FCBA has not been violated. Similarly, by not providing written notice, Plaintiffs did not comply with their obligation under the Cardmember Agreement to provide notice.

Based on Defendants' proper payment allocation and Plaintiffs' failure to allege that they gave Defendants written notice, Plaintiffs' claims for Breach of Contract and the Violation of the FCBA fail and are hereby **DISMISSED WITH PREJUDICE**.

### 2. Count Three: Plaintiffs' Allegations Do Not Show that Defendants Violated the California Rosenthal Fair Debt Collection Practices Act

Plaintiffs' third cause of action alleges violations under the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"). (Compl., ¶¶ 53- 59.) Plaintiffs claim that Defendants violated the Rosenthal Act during the course of "debt collection." (*Id*.)

Defendants move to dismiss Plaintiffs' third cause of action under the Rosenthal Act. (*See* Def. Mot.) Defendants contend that Plaintiffs cannot recover under the Rosenthal Act because Defendants never conducted "debt collection." (*Id*. at p. 15 ¶ 10.) According to Defendants, for "debt collection" to have taken place, Plaintiffs account would have to be delinquent or "due or owing" under the Rosenthal Act. (*Id*.) Defendants argue that because Plaintiffs' account was never delinquent, Defendants did not engage in "debt collection" and therefore the Rosenthal Act does not apply.

### A. Plaintiffs' Account Is Not "Due and Owing"

In California, the Rosenthal Act regulates debt collection practices. Cal. Civ. Code §§ 1788.10(b)-1788.13. The Act "prohibit[s] debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts…." *Id*. at § 1788.1(b). The provision of contention is § 1788.2 (d), which defines "'debt'" as "…money, property or their equivalent which is due or owing or alleged to be due or owing…."

According to the Attorney General of California, "due" means "'having reached

12.

the date at which payment is required,'" and "owing" means "'due to be paid.'" 85 Ops. Cal. Atty. Gen. 215, 2002 WL 31440180, at *2 (Oct. 29, 2002) (citing BLACK'S LAW DICTIONARY 515 (7th ed. 1999), col. 2; Webster's 3d New Internat. Dict. (1971) p. 1613).

In Plaintiffs' view, the Rosenthal Act does provide recoverable claims for their allegations. Plaintiffs argue that accounts are considered "due or owing," under the Rosenthal Act, at the moment a billing statement is sent to the cardholder. (Pl. Opp., p. 8.) Even when a billing statement provides a due date in the future, Plaintiffs contend that the amount due on the billing statement is an amount that is encompassed within the Rosenthal Act as "due or owing." (*Id.*)

Defendants describe the Rosenthal Act's construction "as applying exclusively to past due or delinquent debts." (Def. Mot., p. ¶ 2); 85 Ops. Cal. Atty. Gen. 215, 2002 WL 31440180, at *3 (Oct. 29, 2002). Essentially, Defendants construe the term "due or owing" to mean only delinquency while Plaintiffs urges the Court not to constrict the definition so narrowly.

Plaintiffs' arguments do not persuade the Court. As Plaintiffs mention, the legislative findings of the Rosenthal Act encourage fair practices in collecting debt. (Dkt. No. 13, p. 6 ¶ 3.) The collection of debt that is "due or owing" is fairly understood as debt that was to be due presently or was previously due and is now delinquent. *Bailey v. Security Nat. Servicing Corp.*, 154 F. 3d 384, 387 (7th Cir. 1998) (pointing to "[c]ommon sense and the plain meaning of the statute require that

13.

we distinguish between an individual who comes collecting on a defaulted debt and one who seeks collection on a debt owed"). When Plaintiffs made their $880.00 payment on June 17, 2011, the account was neither "due or owing" because the due date listed on the statement was July 2, 2011. (Compl., ¶16; Dkt. No. 12, Ex. C, p. 76.) Therefore, because the payment was made two weeks before the listed due date, the Plaintiffs' account was not "due or owing."

Moreover, focusing on the literal meaning, due is defined as "immediately enforceable." BLACK'S LAW DICTIONARY 222 (2d ed. 2001). When the listed due date on the billing statement is a future date, a billing statement cannot be "due" or "immediately enforceable" when it is sent to a cardholder.

Lastly, the Attorney General of California's opinion states that the legislative purpose of "due or owing" exclusively comprise of "debts that have become delinquent and subject to immediate collection activities." 85 Ops. Cal. Atty. Gen. 215, 2002 WL 31440180, at *2 (Oct. 29, 2002). Plaintiffs premise their cause of action on the allegation that when the billing statement was sent, the account was "due or owing" for the purposes of the Rosenthal Act. (Pl. Opp., p. 8.) This assertion is misguided. A due date listed on a billing statement is the date by which the cardholder must pay the amount due on the account. It is not "due or owing" as of the day the statement is sent. Consequently, because Plaintiffs' account was not delinquent or "due or owing," Defendants were not engaged in "debt collection" under the Rosenthal Act, and Plaintiffs' third cause of action cannot stand.

Therefore, this cause of action is **DISMISSED WITH PREJUDICE.**

### 3. Count Four: Plaintiffs' Allegations Do Not Show That Defendants Violated the California Unfair Competition Law

Plaintiffs' fourth cause of action alleges violations of the UCL. (*See* Compl.) This claim is based on the same conduct cited throughout this Order.

Section 17200 prohibits "any unlawful, unfair or fraudulent business act or practice." *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012). An act is "fraudulent" if members of the public are likely to be deceived. *Id*. at 1169. "A plaintiff alleging unfair business practices under these statutes must state with reasonable particularity the facts supporting the statutory elements of the violation." *Khoury v. Maly's of Cal., Inc.*, 14 Cal. App. 4th 612, 619 (1993).

Plaintiffs' argument relies on the fraudulent provision of the UCL. (*Id*., ¶¶ 60-69.) Using the UCL fraudulent provision, Plaintiffs claim that Defendants' alleged debt collection practices have violated the UCL. (*Id*.) Plaintiffs accuse Defendants of fraudulently collecting interest payments from Plaintiffs and other class members. (*Id*.)

The Court has already expressed its views as to why the conduct alleged is not is contrary to the Cardmember Agreement, the FCBA, and other applicable statues. This conduct is not fraudulent nor does it deceive members of the public under the UCL statute.

Moreover, the Ninth Circuit has applied a safe-harbor doctrine when legislation

permits certain conduct. *Davis*, 691 F.3d at 1164 ("When specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor."); *Cal—Tech Communications, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 83 Cal. Rptr. 2d 548, 973 P.2d 527, 541 (Ca. 1999) ("Although the unfair competition law's scope is sweeping, it is not unlimited…."). Here, the safe-harbor doctrine applies to Defendants' conduct. The Cardmember Agreement, the FCBA, and other applicable regulations permit Defendants to allocate Plaintiffs' June 17, 2011 payment in the manner in which they did. Because federal authority allows such conduct, Defendants' actions fall within the safe-harbor doctrine.

Consequently, without an underlying fraudulent act, this cause of action is **DISMISSED WITH PREJUDICE.**

**4. Request for a Leave to Amend Is Denied**

A leave to amend is appropriate unless it is clear that the complaint cannot be cured in alleging different facts. (Pl. Opp., p. 13); *Silva v. Di Vittorio*, 658 F.3d 1090, 1105 (9th Cir. 2011). Plaintiffs' own allegations defeat their claims, and there appear to be no other allegations that could cure the faults in Plaintiffs' complaint. Plaintiffs have not alleged any wrongful conduct. Thus, a leave to amend will be futile. Therefore, the Court **DENIES** Plaintiffs' request for leave to amend.

///

///

///

16.

## IV. CONCLUSION

Based on the reasons articulated above, the Court **GRANTS** Defendants' Motion to Dismiss **WITH PREJUDICE** as to all the Defendants.

**IT IS SO ORDERED.**

Dated:  December 19, 2014     _____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE